IN THE UNITED DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| **JESSICA MILLER,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CIVIL ACTION NUMBER:** |
| | ) | **14-468** |
| **EDWIN J. SPENCE,** | ) | |
| **EDWIN J. SPENCE JR.,** | ) | |
| **PORT II SEAFOOD OYSTER** | ) | |
| **BAR, INC.** | ) | |
| **GULF COAST STEAMER, INC.** | ) | |
| **THE SHRIMP BASKET, INC.,** | ) | |
| | ) | |
| **Defendants,** | ) | **JURY DEMAND** |
| | ) | |
| | ) | |

## COLLECTIVE ACTION COMPLAINT

Comes Now, Plaintiff Jessica Miller, by and through her undersigned

counsel, and states the following:

## I.    INTRODUCTION

1.    Defendant Edwin J. Spence is the owner of Defendant Port II Seafood &

Oyster Bar, Inc., Defendant The Shrimp Basket Inc., and Defendant Gulf Coast

Steamer, Inc., which is a joint enterprise that operates several sister restaurants that

operate under the banners: (1) Mikee's Seafood; (2) Shrimp Basket; and (3) the

Steamer. In total there are twenty-two locations located in Alabama, Florida, and Mississippi.

2.      Defendants are doing business as Mikees' Seafood in Gulf Shores, Alabama.

3.      Defendant The Shrimp Basket, Inc., and Gulf Coast Steamer, Inc. are corporations conducting business in the State of Alabama.

4.      The Shrimp Basket has twenty (20) locations at the following addresses:

a.      6154 US 90 Hattiesburg, Mississippi

b.      64 Liberty Park Place Evergreen, Alabama

c.      1111 Highway 31 South Bay Minette, Alabama

d.      1500 S. Mckenzie Street, Foley, Alabama

e.      2nd Avenue & Highway 59 Gulf Shores, Alabama

f.      2540 Old Shell Road Mobile, Alabama

g.      5405 Highway 90 West, Mobile Alabama

h.      7900 Vaughn Road, Montgomery Alabama

i.      26651 Perdido Beach Blvd, Orange Beach Alabama

j.      3429 McFarland Boulevard East, Tuscaloosa, Alabama

k.      1651 South College Avenue Auburn, Alabama

l.      560 Mary Esther Cuttoff, Fort Walton, Florida

m.      6389 Highway 90 Milton, Florida

n.      8900 Navarre Parkway, Navarre, Florida

o.      14600 Perdidio Key Drive, Perdido Florida

p.      6501 North Davis Highway, Pensacola Florida

q.      60 West Nine Mile Road, Pensacola Florida

r.      709 North Navy Boulevard, Warrington Florida

s.      711 Highway 98, Destin Florida

t.      9265 Highway 49, Gulfport Mississippi

5.      The Steamer has one location located at 124 West 1st Avenue, Gulf Shores, Alabama.

6.      Mikee's Seafood is located in Gulf Shores, Alabama and is family owned and operated since 1987.

7.      Edwin J. Spence Jr. is the son of the Owner and works as the General Manager of the Mikee's Seafood Location, and upon information and belief as district manager over several other locations.

8.      Plaintiff Jessica Miller resides in Gulf Shores, Alabama.   From approximately March 2013 to December 2013, she was employed by Defendant as a server/bartender in the restaurant at its Gulf Shores location.

**II.     PRELIMINARY STATEMENT**

9.      This action is brought pursuant to the FLSA, 29 U.S.C. §201 et seq. and,

specifically, the collective action provision of the Act found at §216(b), for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendants, which have deprived named Plaintiff, and all other similarly situated servers and bartenders employed by Defendants, of their lawful wages.

10.     This action is brought to recover unpaid compensation, in the form of unpaid wages and overtime, owed to the Plaintiff, and all similarly situated servers employed by Defendants, pursuant to the FLSA.  For up to three years prior to the filing of this complaint, Defendants have had a uniform policy and practice of requiring employees to participate in an invalid tip pool.

11.     Plaintiff and all other similarly situated Servers employed by Defendants were paid an hourly cash wage of $2.13 per hour.

12.      Plaintiff and all other similarly situated bartenders employed by Defendants were paid an hourly cash wage of $5.00 per hour.

13.     Defendants required servers and bartenders to participate in an invalid tip pool and contribute a portion of their tips to employees who do not customarily receive tips.

14.     Food Expeditors are non-tipped employees as they are not employed to engage with customer, but to prepare trays in the kitchen, away from customers.

Whatever interaction food expeditors had with customers was incidental. The food expeditors do not customarily and did not regularly receive more than thirty dollars in tips a month from customers nor did they provide "service" to customers in a way that warranted a share of the gratuity left by customers.

15.     Dishwashers are non-tipped employees as they are not employed to engage with customer, but to wash dishes in the kitchen, away from customers.  Whatever interaction dishwashers had with customers was incidental. The food expeditors do not customarily and did not regularly receive more than thirty dollars in tips a month from customers nor did they provide "service" to customers in a way that warranted a share of the gratuity left by customers.

16.      During the "pre-shift" time Plaintiff and, on information and belief, all similarly situated Servers were required to report to work approximately one hour before Defendants opens its doors and begins serving customers and were prohibited from clocking in.

17.      During this "pre-shift" time before serving customers, Plaintiff, and on information and belief, all similarly situated servers, were required to perform non-serving duties, and were not compensated at all.

18.     Duties performed during this time included, wiping down the dining hall tables, wiping down computer screens, arranging tabletop fixtures and chairs,

retrieving and disposing of any leftover trash left within the dining hall, making tea which involved retrieving tea urns, tea bags, and sugar from the back and mixing them, wiping down all counter tops in the front of the kitchen, retrieving glasses and drink pitchers, reassembling soda fountains and tea urns, wiping and cleaning server stations, restocking server stations with to go bags, to go cups, to go boxes, to go silverware, straws, and any supplies that would be needed throughout the day. Other duties performed included slicing lemons, limes, tomatoes, onions, carrots, tearing up lettuce, making salad dressing, slicing bread for croutons, boiling and peeling eggs, making cocktail sauce and portioning it, portion tarter sauce, making and portioning coleslaw, pulling gumbo, etouffe, black bean soup to dethaw, check that there was enough turnip greens and baked beans for the entire, portioning marmalade and remouliade, pulling dessert from dessert coolers, making sure ketchup bottles were filled and cleaned.

19.     Plaintiff and, on information and belief, all similarly situated Servers, were not permitted to clock in until a table was seated in their section.

20.     During this interim time between "pre-shift" duties and customers being seated Plaintiff, on information and belief, all similarly situated Servers, were required to continue performing other non-tip producing job duties or wait  to be ready to serve customers.

6

21.     During the Course of their shift Plaintiff and, on information and belief, all similarly situated Servers were asked to perform non-tip producing work and/or clock out and wait until they had customers to serve.

22.      At the end of their time serving tables, Plaintiff, and, upon information and belief, all other similarly situated Servers, were required to perform non-serving, non tip-producing duties for approximately forty-five minutes.

23.     During this "post-shift" time they were performing non-serving duties, they were asked to clock out if not waiting on a table and were not compensated for this time.

24.     Duties performed during post-customer serving time, the performed duties including the following: pulling ketchup from tables: refilling and change the salad bar into new containers, then wiping and sanitizing the salad bar; placing soups and vegetables into new containers, wiping and sanitizing the old containers; draining three hot steam wells, refilling the server station with teabags, sugar, filter, to go cups and boxes, straws, refill ketchup bottles; wiping down server areas in the kitchen with bleach water or sanitizer; re-wrapping all the sauce containers and changing the pans for those that had been halfway used; re-wrapping desserts and stowing them in the cooler; cleaning trays; and  preparing ranch dressing and/or cocktail sauce if out to be ready for the morning shift.

25.     If the Plaintiff and, on information belief other servers, were designated as a closer then they would be permitted to stay on the clock but would only be paid $2.13/hour and would have to perform the same job duties described in paragraph 24, and the following additional duties: sweeping, vacuumed, cleaning the wait station, bringing tea pitchers, glasses, plates, and other containers to the dishwasher, dismantling  and cleaning tea urns and soda fountains, wiping down counter tops, wiping down and scrubbing crevices within the soda machines, washing the tea urns with bleach and rinsing them, picking up trash throughout the entire dining hall, retrieving all trays throughout the restaurant, and cleaning trays.

26.     Performing the closing duties took at least an hour.

27.     Plaintiff and other similarly situated employees spent a substantial amount of time -- in excess of 20% of their working time -- performing these non-tip-producing activities.

28.     At the end of each shift Defendants total servers' tips and require servers to pay two (2) percent of food sales into a cup to be divided up to non-tipped employees, including dishwashers. Servers were also required to contribute $2.00 per shift to the food expeditor who plated trays in the kitchen.

29.     Defendants including dishwashers (non-tipped employees) in the tip pool invalidates the tip pool and requiring employees to contribute a portion of their tips

to food expeditors (non-tipped employees), resulted in the misapplication of the tip credit, as well as the misappropriation of server's tip-earnings.

30.     Defendants apply the "pre-tipout" tip total as a tip credit, without crediting the server, the money paid by them as part of the tip pooling, when it issues their bi-weekly pay checks.

31.     Meaning that the server would have to pay taxes on money the Defendants used to subsidize the wages/pay of dishwashers and food expeditors.

32.     Defendants' total deductions from employees' tip income enriched it by elevating beyond its approximate financial posture had it employed a valid tip pooling/sharing system and/or not employed any tip-pooling/sharing system.

33.     Plaintiff, and other similarly situated servers, are not compensated for this time spent waiting on the administration of the tip pool.

34.     Plaintiff and all other similarly situated employees should have been paid at least the minimum cash wage for the pre- and post- shift time spent in performing these non-tip producing duties.

35.     Defendants improperly claimed the FLSA tip credit (29 U.S.C. § 203(m)) for time spent performing this non tip-producing work.

36.     Time spent on these non-tip producing activities was not occasional, incidental, or insignificant; it was substantial.

37.    Defendants could have easily calculated the time spent on these non tip-producing tasks, as they were performed at the beginning and the end of the servers' shifts and not interspersed throughout the shift.

38.    On information and belief, all Servers employed by Defendants have these same duties and responsibilities.

39.    Defendants routinely altered servers' time records to avoid having to pay minimum wage and overtime.

40.    Defendants routinely instructed servers' to clock out if they had no customers and wait.

41.    Defendant Edwin Spence Jr., District Manager, instructed managers and assistant managers to "roll back" or reduce the hours recorded if employees worked over forty hours a week, in order to avoid paying employees their overtime rate, which would have been one and half times their regular rate of pay.

42.    Defendants prohibited servers from clocking-in prior to their first table being seated while they performed non-tipped producing sidework or simply waiting, so as to avoid paying minimum wage and overtime.

43.    Plaintiff and, on information and belief, all other similarly situated Servers, were subject to Defendants' illegal pay practices, and are similarly situated for purposes of their job duties.

10

44.     Plaintiff and all similarly situated who elect to participate in this action,

seek misappropriated tip monies, unpaid wages and overtime compensation, an

equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29

U.S.C. §216(b).

## III.   JURISDICTION AND VENUE

45.     This Court has subject matter jurisdiction over this action pursuant to 28

U.S.C. §1331.  Venue is proper in the Southern District of Alabama, pursuant to 28

U.S.C. §1391(b).

46.     Defendants are subject to personal jurisdiction in the State of Alabama for

the purpose of this lawsuit.

## IV.   FLSA COLLECTIVE ACTION ALLEGATIONS

47.     At all times material to this action, Defendants have been an enterprise

engaged in commerce or in the production of goods for commerce as defined by

§203(s)(1) of the FLSA.

48.     Defendants are interstate companies whose employees are engaged in

interstate commerce and whose employees handle and/or work on goods that have

been moved in and/or produced in commerce.  Its annual gross volume of business

exceeds $500,000.00.

49.     At all times relevant to this action, Defendants are an "employer" of

Plaintiff as defined by §203(d) of the FLSA.

50.     At all times material to this action, Plaintiff, and all others similarly situated Servers and bartenders were "employees" of Defendants as defined by §203(e)(1) of the FLSA. They also worked for Defendants within the territory of the United States within three years preceding the filing of this lawsuit.

51.     The provisions set forth in §207 of the FLSA apply to Defendants, and the Plaintiff and all similarly situated Servers and bartenders were covered by §207 of the FLSA during their employment with Defendants.

52.     The Plaintiff and all similarly situated Servers and bartenders employed by Defendants were individually engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendants. Their interstate commercial activity included, but was not limited to, serving customers who were traveling in interstate commerce, serving food that originated out of state, and processing credit card transactions that crossed state lines.

53.     On information and belief, Defendants have intentionally failed and/or refused to pay Plaintiff and all other similarly situated Servers and bartenders, according to the provisions of the FLSA.

54.     Defendants' systems and practices relating to its invalid tip pooling/sharing arrangement resulting in its misappropriation of tip monies, non-payment of wages

and overtime to Plaintiff and all similarly situated Servers and bartenders,

disqualifies the Defendants from claiming any FLSA overtime exemptions, have

existed since at least October of 2011.

55.     On information and belief, Defendants have been aware of the requirements

of the FLSA and its corresponding regulations and their own violations of the

FLSA since at least September of 2011. Despite this knowledge, Defendants have

failed to pay the Plaintiff and similarly situated Servers and bartenders, the amount

of pay required by the FLSA.

56.     There are numerous similarly situated Servers and bartenders of Defendants

who have been improperly compensated in violation of the FLSA and who would

benefit from the issuance of Court-Supervised Notice of the present lawsuit and the

opportunity to join the present lawsuit. These similarly situated employees are

known to Defendants and are readily identifiable and can be located through

Defendants' records - specifically, all Servers who have been employed by

Defendants and have not been properly compensated would benefit from

Court-Supervised Notice and the opportunity to join the present lawsuit and should

be so notified.

57.     On information and belief, Defendants have engaged in a widespread

pattern and practice of violating the provisions of the FLSA by failing to pay

Plaintiff and all similarly situated Servers and bartenders, in accordance with §207 of the FLSA.

58.    As a result of Defendants' violations of the FLSA, Plaintiff and all other similarly situated Servers and bartenders have suffered damages by failing to receive compensation in accordance with §207 of the FLSA.

59.    In addition to the amount of unpaid wages and benefits owed to the Plaintiff and all other similarly situated Servers and bartenders, they are also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b) and prejudgment interest.

60.    On information and belief, Defendants' actions in failing to compensate Plaintiff and all other similarly situated Servers and bartenders, in violation of the FLSA, were willful.

61.    On information and belief, Defendants have not made a good faith effort to comply with the FLSA.

62.    Plaintiff and all Servers and bartenders are also entitled to an award of attorney's fees pursuant to 29 U.S.C. §216(b).

63.    Plaintiff and all other similarly situated Servers and bartenders have no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for lost overtime and wages, back-pay, and a declaratory judgment is their

14

only means of securing adequate relief.

64.     Plaintiff and all other similarly situated Servers and bartenders, are now suffering, and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

## V.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated Servers pursuant to §216(b) of the FLSA, prays for the following relief:

a.     At the earliest possible time, that she be allowed to give notice, or that the Court issue such Notice, to all Servers and bartenders who have been employed by Defendants who were paid a wage below minimum and were required to contribute a portion of their tips with non-tipped employees, including dishwashers and food expeditors during the three years immediately preceding the filing of this suit, and to all other potential Plaintiff who may be similarly situated, informing them that this action has been filed, the nature of the action, and of their right to opt-into this lawsuit if they were not paid compensation and benefits for all hours worked pursuant to 29 U.S.C. §216(b);

b.     An order awarding damages in the amount of their respective unpaid compensation and benefits, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b), and/or prejudgment interest;

c.      An order awarding reasonable attorneys' fees, including the costs and

expenses of this action;

d.      Such other legal and equitable relief including, but not limited to, any

        declaratory relief to which they may be entitled;

e.      An order requiring Defendants to make Plaintiff and all other

    similarly situated Servers whole by awarding them lost wages (plus      interest)

and liquidated damages; and

f.      Plaintiff further demands a jury to try the issues when joined.

**Vi.    JURY DEMAND**

        THE PLAINTIFFS DEMANDS A TRIAL BY STRUCK JURY.

DATED: October 8th,  2014

                            Respectfully submitted,

                            /s/ Daniel E. Arciniegas
                            Jon C. Goldfarb (ASB-5401-F58J)
                            Daniel E. Arciniegas (ASB 7809-D67A)
                            L. William Smith (ASB 8660-A61S)
                            Counsel for Plaintiffs

**OF COUNSEL:**
WIGGINS, CHILDS, PANTAZIS, FISHER,
& GOLDFARB, LLC.
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Telephone No.: (205) 314-0500
Facsimile No.: (205) 254-1500

                            16

**DEFENDANTS' ADDRESS:**
Edwin J. Spence
201 East Beach Blvd.
Gulf Shores, AL 36542

Edwin J. Spence Jr.
201 East Beach Blvd.
Gulf Shores, AL 36542

Port II Seafood Oyster Bar, Inc.
c/o Edwin J. Spence
201 East Beach Blvd.
Gulf Shores, AL 36542

Gulf Coast Steamer, Inc.
c/o Edwin J. Spence
613 Gulf Shores Parkway
Suite 301
Gulf Shores, AL 36542

The Shrimp Basket, Inc.
c/o Edwin J. Spence
301 Gulf Shores Parkway
Gulf Shores, AL 36542