**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

JESSICA MILLER, *et al.*,              :
                                       :
    **Plaintiffs,**                :
                                       :
vs.                                    : CIVIL ACTION NO. 14-00468-CG-B
                                       :
EDWIN J. SPENCE, *et al.*,             :
                                       :
    **Defendants.**               :

<u>**REPORT AND RECOMMENDATION**</u>

This case is before the Court on Plaintiffs' Motion for Conditional Certification (Doc. 11), and Defendants' Motion to Strike Plaintiffs' Supplemental Evidentiary Submission (Doc. 35). The motions, which have been fully briefed and are ripe for resolution, have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c). Upon consideration of all matters presented, the undersigned RECOMMENDS, for the reasons stated herein, that Plaintiffs' Motion for Conditional Certification be **granted**, in part, and **denied** in part, and that Defendants' Motion to Strike Plaintiffs' Supplemental Evidentiary Submission be **denied**.

### I. <u>Background Facts</u>

Plaintiff Jessica Miller filed the instant action alleging that Defendants violated the Fair Labor Standards Act ("FLSA") by not paying servers and bartenders the required minimum wage.

(Doc. 1).   In the Complaint, Miller alleges that Defendant Edwin J. Spence is the owner of Defendant Port II Seafood & Oyster Bar, Inc., Defendant The Shrimp Basket, Inc., and Defendant Gulf Coast Steamer, Inc., and through these companies, he operates the Steamer restaurant in Gulf Shores (hereinafter "Steamer"), Mikee's Seafood in Gulf Shores (hereinafter "Mikee's"), and twenty Shrimp Basket ("Shrimp Basket") restaurants in Mississippi (2), Florida (8) and Alabama (10).   Defendant Edwin Spencer, Jr. is alleged to be the son of Edwin S. Spence, Sr., the general manager of Mikee's Seafood, and the district manager for several of the other referenced restaurants. (Id. at 1-3).

In her Complaint, Plaintiff Miller asserts that she was employed by Defendants as a server/bartender in the Gulf Shores restaurant,[1] that she was paid an hourly wage of $2.13 as a server, and $5.00 as a bartender, and that Defendants required servers/bartenders to remit a portion of their tips each shift to a tip pool, that was improperly distributed to employees who do not customarily receive tips, such as food expeditors, oyster shuckers, and dishwashers. (Id. at 4-5).   Miller further alleges that while working as a server, she, and other servers, were required to perform cleaning and other side work "off the clock"

---

[1] Miller does not identify at which of Defendants' Gulf Shores restaurants she worked.

before and after their regularly scheduled shifts, were not permitted to "clock in" until customers were seated in their section, and if they were designated as closers, they would be permitted to remain "on the clock" and would be assigned additional cleaning duties, but would only be compensated at the non-tip producing wage. (Id.).  Finally, Miller alleges that Defendant Edwin Spence Jr., District Manager, instructed managers and assistant managers to "roll back" or reduce the hours recorded if employees worked over forty hours a week, in order to avoid paying employees their overtime rate. (Id. at 10).  Miller asserts that all other similarly situated servers were subject to Defendants' illegal pay practices and are similarly situated for purposes of their job duties. (Id.)

In her Motion for Conditional Certification (Doc. 11), Miller asks the court to conditionally certify this matter as a collective action and to order court-facilitated notice to all current and former employees, including servers and bartenders, of Defendants Mikee's, Steamer, and Shrimp Basket restaurants who were paid below minimum wage and were required to contribute a portion of their tips to non-tipped employees.  According to Miller, Defendants violated the FLSA by requiring her and other "tipped" employees to remit a portion of their tips to Defendants for the purpose of distributing monies to non-tipped employees.  Miller asserts that "[t]his policy was uniformly

applied to the entire putative class, rendering the putative class members 'similarly situated' for the purposes of conditional certification." (Id. at 8). The proposed class for conditional certification is described as:

> all current and former employees, including servers, of Mikee's Seafood, the Shrimp Basket, and Steamer who were paid a cash wage less than minimum wage (excluding any credit for tips retained), or for whom Defendant claimed a "tip credit" while requiring employees to contribute a portion of their tips to food expeditors, dishwashers, oyster shuckers and/or other non-tipped employees from November 19, 2011 through November 19, 2014.

(Id.).

In support of the motion, Miller submitted the declarations of Rebeka Norwood, Richard Boyett, and Tyra Gardner. (Docs. 11-1, 11-2, 11-3). In her Declaration, Norwood asserts that she worked as a server at the Shrimp Basket in Gulf Shores, Foley, and Orange Beach, Alabama from January 2013 through February 2014, that she was paid $2.13 per hour, plus tips, and that she was required to contribute a portion of her tips to food expeditors, who did not interact with customers.[2] (Doc. 11-1).

Richard Boyett avers that he worked as a server at Mikee's in Gulf Shores starting in March 2013, that in October 2013, he

_____

[2] Norwood also makes assertions about the performance of non-tipped duties; however, Miller's Motion for Conditional Certification seeks to certify a class based on Defendants' tip pooling policy.

4

worked as a manager, and that his employment ended in September 2014. Boyett asserts that as a server, he was paid $2.13 per hour, with tips, and that he was required to contribute $2.00 from his tips to food expeditors, who did not interact with customers, and 2% of his tips to dishwashers.[3] (Doc. 11-2).

Tyra Gardner avers that she worked as a server at Mikee's and Steamer in Gulf Shores, Alabama from March through July 2014. According to Gardner, as a server, she was required to contribute to a tip pool for food expeditors, who did not interact with customers, oyster shuckers (at Mikee's) and dishwashers based on a formula that utilized her food sales.[4] Gardner further asserts that she believes that there are others who would join the lawsuit if given notice. (Doc. 11-3).

Also included in support of the Motion for Conditional Certification are four consent forms executed by Richard Boyett, Darla Longo Bezerra, James Chadwick Franks, and Rebecca Norwood. (Docs. 11-4, 11-5, 11-6, 11-7). The consent form

---

[3] Boyette also makes assertions about the performance of non-tipped duties, and alleged "off the clock" work; however, Miller's Motion for Conditional Certification is confined to Defendants' tip pooling policy. (Doc. 11-2).

[4] Gardner also makes assertions about the performance of non-tipped duties at the $2.13 rate, not being allowed to clock in until she had a table to serve, and working "off the clock"; however, Miller's Motion for Conditional Certification is confined to Defendants' tip pooling policy. (Doc. 11-3).

relates solely to Defendants' policy or practice of requiring servers/bartenders to contribute to a tip pool, which included expeditors, dishwashers, or other kitchen staff. (Doc. 11-9) While Boyett, Bezerra, Franks, and Norwood express an interest in joining this action, Bezerra's form does not indicate at which of Defendants' restaurant she was employed. Franks' form reflects that he was employed by Mikee's Seafood in Gulf Shores, Alabama, from May 2013 to August 2014 as a server at $2.13 per hour, and that he was required to contribute to a tip pool that benefited expeditors and dishwashers.

Defendants have denied the substantive allegations in Miller's Complaint and opposed the Motion for Conditional Certification.  In their Response in Opposition, Defendants acknowledge that servers at Mikee's, Shrimp Basket, and Steamer are paid an hourly wage of $2.13 plus tips, and that they are required to contribute a percentage of their tips, based on their total food sales, to a tip pool.  According to Defendants, the certification motion should be denied for a myriad of reasons, including that Miller is not similarly situated to the putative class members. (Doc. 24).  Defendants have also submitted competing affidavits from twelve current and two former employees who dispute Miller's substantive allegations. (Docs. 24-1, 24-2, 24-3, 24-4, 24-5, 24-6, 24-7, 24-8, 24-9, 24-10, 24-11, 24-12, 24-13, 24-14).

6

Subsequent to the filing of her Motion for Conditional Certification, Miller filed a motion to amend her complaint in order to add five opt-in Plaintiffs, namely Richard Boyett, Rebeka Norwood, Darla Bezerra, James Franks, and Amber Race, as named Plaintiffs. (Doc. 25). In an order dated March 10, 2015, the motion was granted, in part. (Doc. 38). The Court observed that the allegations raised in Norwood's and Boyett's declarations reflect that they were employed as servers at Defendants' restaurants, that like Miller, they alleged that they were required to contribute to a tip pool with non-tipped employees, and that they were required to perform "work off the clock" both before and after their respective shifts. Because their allegations are substantially similar to those of Plaintiff Miller, the Court granted Plaintiffs' Motion as to Norwood and Boyett. (Id.) The Court denied the Motion with respect to Darla Bezerra, James Franks, and Amber Race because their consent forms did not "provide enough information about their shifts and required duties to indicate claims arising from a series of similar transactions as required by FRCP 20(a)(1)." (Doc. 38 at 7).

## II. Defendants' Motion to Strike Miller's Supplemental Evidentiary Submission in Support of Her Motion for Conditional Certification.

Before reaching the merits of the Motion for Conditional Certification, the Court addresses Defendants' Motion to Strike

Miller's Supplemental Evidentiary Submission in Support of Her Motion for Conditional Certification. (Doc. 35). Defendants seek to have stricken the declarations of Marie Vogel and Matt Boyington, which Miller submitted after the briefing period had closed. Defendants acknowledge that plaintiffs may file opt-in consent forms until such time as there is a ruling on a motion for certification, but argue that the declarations should be disregarded because they are untimely, and because they do not contain enough detail to rebut the detailed declarations submitted by Defendants. (Id.). In response, Plaintiffs argue that Vogel and Boyington did not contact Plaintiffs' counsel until after the briefing period had closed, and that Defendants have failed to demonstrate any harm particularly in light of the fact that there is no dispute that the opt-in forms, which contain the same general information as the declarations, can be filed up until a decision is rendered on the certification motion. (Doc. 37).

Upon consideration, the undersigned finds that the Motion to Strike is due to be **denied.** First of all, the Vogel and Boyington declarations confirm and elaborate on the information that is contained in the consent forms, which all agree were timely filed. Further, the declarations do not contain allegations that are being asserted for the first time. Instead, the Vogel and Boyington declarations raise allegations

regarding the existence of the tip pooling policy at the Steamer. These same allegations regarding the Steamer were also raised in the Gardner declaration, which was submitted in conjunction with the Motion for Conditional Certification. Similar to the Gardner declaration, Vogel asserts that she worked as a server at Steamer from December 2010 through June 2014, that the manager directed that "food runners"/expeditors were not to run food, and that while working at Steamer, she observed "food runners"/expeditors "plate the food" so the servers could deliver the food to the customers' tables, but did not see them interact with the customers.

Also, Boyington asserts that he too worked as a server at Steamer, and that he was required to contribute to a tip pool, which included employees who did not "run" food to customers' tables. Given that the Vogel and Boyington declarations merely reiterate allegations that were made in the earlier filed Gardner declaration, and that were addressed by Defendants in its opposition to the Motion for Conditional Certification, the undersigned finds that striking the declarations is not warranted under the circumstances. Thus, Defendants' motion is **denied.**

## III. Framework for Conditional Class Certification.

The FLSA expressly authorizes a worker seeking unpaid compensation to bring a collective action on behalf of herself

and "similarly situated" workers. See 29 U.S.C. Sec. 216(b).[5]
Unlike traditional class actions under Rule 23 of the Federal
Rules of Civil Procedure (which binds all members of the class
whether they choose to participate in the litigation or not),
the FLSA § 216 (b) collective action is "opt-in," that is,
workers are bound by the lawsuit's results only if they
affirmatively decide to participate by submitting written
consent to the court. Anderson v. Cagle's, Inc., 488 F.3d 945,
950 n.3 (11th Cir. 2007)("[U]nlike class actions governed by
Rule 23 . . . FLSA collective actions require potential class
members to notify the court of their desire to opt in to the
action."); Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208,
1216 (11th Cir. 2001); see also Grayson v. Kmart Corp., 79 F.3d
1086, 1096 n.12 (11th Cir. 1996)("[I]t is clear that the
requirements for pursuing a § 216(b)class action are independent
of, and unrelated to the requirements for class action under
Rule 23 . . .").

The FLSA's "opt-in" procedure was created "to avoid

---

[5] § 29 U.S.C. § 216(b) provides:

> An action . . . may be maintained against any employer
> . . . by any one or more employees for and in behalf
> of himself or themselves and other employees similarly
> situated.  No employee shall be a party plaintiff to
> any such action unless he gives his consent in writing
> to become such a party and such consent is filed with
> the court in which such action is  brought.

multiple  lawsuits where numerous employees have allegedly been harmed by a claimed violation or violations of the FLSA by a particular employer." Prickett v. DeKalb County, 349 F.3d 1294, 1297 (11th Cir. 2001).  The Eleventh Circuit recommends that district courts utilize a two-stage analysis to determine whether to certify a collective action under § 216(b). Anderson 488 F.3d at 952; Hipp, 252 F.3d at 1218-19.

"[A]t the initial stage, the district court's decision [to conditionally certify a proposed class] is based primarily on the pleadings and any accompanying affidavits," and as a result, courts utilize "a fairly lenient standard for determining whether plaintiffs are truly similarly situated." Anderson, 488 F.3d at 953 (citations omitted).  The plaintiff's burden at this stage is to show a reasonable basis for their claim that (1) there are putative class members who wish to opt-in and (2) those putative class members are similarly situated to the named plaintiffs with respect to their job requirements and pay provisions. Morgan v. Family Dollar Stores, Inc. 551 F.3d 1233, 1260 (11th Cir. 2008); Robinson v. Ryla Teleservices, Inc., 2011 U.S. Dist. LEXIS 147027 (S.D. Ala. Dec. 21, 2011).  In establishing that they are  similarly situated, plaintiffs "need only show that their positions are similar, not identical to the positions held by the putative class members". Hipp, 252 F.3d at 1217.  Indeed, at this stage, plaintiffs can make the required

showing, which is not heavy, by proffering substantial allegations of class-wide [harm], that is, detailed allegations supported by affidavits which 'successfully engage defendants' affidavits to the contrary." Id. at 1219; Grayson, 79 F.3d at 1097. "If the court 'conditionally certifies the class,' putative class members are given notice and the opportunity to 'opt-in'". Cameron-Grant v. Maxim Healthcare Servs., Inc., 347 F.3d 1240, 1243 n.2 (11th Cir. 2003)(quoting Hipp, 252 F.3d at 1218). The decision to create an opt-in class under section 216(b) lies within the Court's discretion. Hipp, 252 F.3d at 1219 ("The decision to create an opt-in class under § 216(b) . . . remains soundly within the discretion of the district court.").

The second stage is typically precipitated by a motion for "decertification" filed after discovery is largely complete. Cameron-Grant, Inc., 347 F.3d at 1243 n.2 (quoting Hipp, 252 F.3d at 1218). At this stage, if the plaintiffs have established that they are similarly situated, the court allows the representative action to proceed to trial. If it is determined that the plaintiffs are not similarly situated, the court decertifies the class, the opt-in plaintiffs are dismissed without prejudice, and the class representative plaintiffs proceed to trial on their individual claims. Id. In determining whether to conditionally certify a FLSA action for notification

only purposes, the court does not review the underlying merits
of the case. Kubiak v. S.W. Cowboy, Inc., 2014 U.S. Dist. LEXIS
80225 (M.D. Fla. June 12, 2014)(citing Pares v. Kendall Lakes
Auto, LLC, 2013 U.S. Dist. LEXIS 90499(S.D. Fla. Jun 27, 2013);
Kerce v. W. Telemarketing Corp., 575 F. Supp. 2d 1354, 1358
(S.D. Ga. 2008).

## IV. Conditional Class Certification Analysis.

### A. Other Individuals Seek to Join the Suit

As noted supra, plaintiffs must demonstrate that there are
other employees who wish to opt-in.  The courts have not
established a magic number that is required to demonstrate that
there are others who seek to join the action.  However, courts
have determined that as few as two or three can sometimes be
sufficient to meet the plaintiff's burden at this stage. See
Ciani v. Talk of Town Restaurant, Inc., 2015 U.S. Dist. LEXIS
5580 (M.D. Fla. Jan. 16, 2015)(holding that that the presence of
two opt-in plaintiffs who filed declarations describing their
working conditions and their desire to join the lawsuit was
sufficient to demonstrate that others desired to join the
lawsuit); Stuven v. Tex. De Braz. Corp., 2013 U.S. Dist. LEXIS
22240 (M.D. Fla. Feb. 19, 2013)(finding that the plaintiff's
complaint, in combination with the declarations and presence of
three additional opt-in plaintiffs, presented adequate evidence
that others desired to join the action); Robbins-Pagel v. WM.F.

Puckett, Inc., 2006 U.S. Dist. LEXIS 85253 (M.D. Fla. Nov. 22, 2006)(finding that three affidavits alleging claims of unpaid overtime was sufficient to establish that other individuals were interested in joining the action; Dieujuste v. R.J. Elec., Inc., 2007 U.S. Dist. LEXIS 100531 (S.D. Fla. Aug. 21, 2007)(granting conditional certification when two individuals sought overtime wages against the same employer and each filed a declaration).

In this action, Miller submitted declarations from five individuals who described their working conditions as servers at Mikee's, Steamers, and/or the Shrimp Basket in Gulf Shores, Foley, and Orange Beach.  Four of the five, namely Norwood, Boyett, Vogel, and Boyington, also submitted consent forms indicating their desire to join this lawsuit.  As noted supra, the Court granted Plaintiff Miller's motion to add Norwood and Boyett as named plaintiffs after determining that the allegations in their declarations were substantially similar to those in Miller's complaint.  Additionally, two other individuals, Bezerra and Franks, have also executed consent forms expressing their interest in joining this action. Defendants have not seriously contested Plaintiffs' showing that there are other employees who desire to opt into this action, and as it relates to the Steamer, Mikee's, and the Shrimp Basket restaurants located in Gulf Shores, Orange Beach, and Foley, the undersigned finds that Plaintiffs have met their burden of

establishing that there are other individuals who desire to join this litigation. However, the record is devoid of any evidence that there are others outside of the Gulf Shores, Orange Beach, and Foley locations who desire to join this action. Thus, Plaintiffs have not made the necessary showing with respect to Defendants' establishments outside of Gulf Shores, Orange Beach, and Foley.

**B. The Employees are Substantially Similar.**

In determining whether the named plaintiffs are in fact sufficiently similar for § 26(b) purposes so as to warrant conditional class certification, courts have not established a bright line nor formulated a one-size-fits-all approach. See Longcrier v. HL-A Co., Inc., 595 F. Supp. 2d 1218, 1233 (S.D. Ala. 2008)(citing Gerlach v. Wells Fargo & Co., 2006 U.S. Dist. LEXIS 24823, 2006 WL 824652, *1 (N.D. Cal., Mar. 28, 2006)(noting that FLSA does not define "similarly situated" and there is little circuit law doing so.). In Hipp, the Eleventh Circuit held that plaintiffs can meet their burden "by making substantial allegations of class-wide violations, that is, detailed allegations supported by affidavits which successfully engage defendants affidavits to the contrary". Hipp, 252 F.3d at 1219(citation omitted).

In this case, the Complaint attacks three of Defendants' policies/practices; however, the motion seeking conditional

certification narrows the focus to Defendants' tip pool policy/practice, and asserts that Defendants require servers and bartenders to contribute a portion of their tips to a tip pool that includes "non-tipped" employees, such as dishwashers or employees who have no-contact with customers. In support of the Motion, Plaintiffs have submitted declarations from individuals who worked as servers at Mikee's, Steamers, and the Shrimp Basket locations in Gulf Shores, Foley, and Orange Beach, and who assert that as servers, they were paid an hourly wage of $2.13 and were required to contribute to a tip pool that included employees who do not have contact with customers.

Under the FLSA, it is permissible for an employer to pay an employee cash wages below the minimum wage if the employer supplements the difference with the employee's tips which is referred to as the employer taking a "tip credit." Rubio v. Fuji Sushi & Teppani, Inc., 2013 U.S. Dist. LEXIS 8469 (M.D. Fla. Jan. 22, 2013)(citing 29 U.S.C. § 203(m)). In order for an employer to qualify for a "tip credit" under 29 U.S.C. § 203(m), the employer must establish that (1) the tip credit is claimed for qualified tipped employees; (2) the employees received proper notice of § 203(m); and (3) all tips received by the employees were retained by them, except when the employee participates in a valid tip pool with other customarily tipped employees. Garcia v. Koning Rest. Int'l, LLC, 2013 U.S. Dist.

LEXIS 186533 (S.D. Fla. May 10, 2013). If an employer fails to satisfy any of these preconditions, the employer may not claim the tip credit, regardless of whether the employee suffered actual economic harm as a result. Id.

Defendants argue that the Motion for Conditional Certification should be denied for a myriad of reasons, including that Plaintiff Miller has failed to show that she is similarly situated to the putative members of the collective class. According to Defendants, Miller has alleged that she worked as a server, bartender, and assistant manager in Defendants' restaurants; yet, she does not identify which of Defendants' restaurants that she worked in, and their records reflect that she worked exclusively for Mikee's except for a single shift at Shrimp Basket. Defendants further contend that she is not similarly situated to the putative class members because she also performed the duties of a bartender and the evidence is undisputed that bartenders did not contribute to a tip pool. Defendants also contend that the fact that Plaintiff Miller also worked as an assistant manager further distinguishes her from the putative plaintiffs as she was paid $10 per hour, which is more than the minimum wage. Additionally, Defendants assert that Miller's claims regarding "side work" and "working off the clock" will require individualized treatment, and the class claim relates solely to the "tip pool" policy. Defendants

further contend that because their three restaurant brands have different concepts, and involve different menus and employee duties, they are not suitable for class treatment.

The undersigned finds that at this stage of the litigation, the differences asserted by Defendants are not sufficient to defeat conditional certification of this action as it relates to servers at Mikee's, Steamers, and the Shrimp Basket locations in Gulf Shores, Orange Beach, and Foley.  In this case, Plaintiffs have made a substantial showing that servers at the above-referenced restaurants are treated similarly and are subject to the same hourly wage and the same policy/practice with regards to the tip pool.  There is no dispute that Defendants paid servers at the above-referenced locations $2.13 per hour, that Defendants took a tip credit, and that Defendants required servers to contribute to a tip pool.  Defendants' policy and practice of requiring servers to contribute to a tip pool was applicable at each of the above-referenced restaurants.  And, there is no question that the restaurants were owned by the same or closely related individuals and entities, and that there was some overlap in management and employees.  Moreover, Plaintiffs have produced evidence that the tip pool impermissibly included non-tipped employees and thereby invalidated Defendants' ability to claim the tip credit.

Although Defendants assert and have submitted declarations

that the tip pool did not include impermissible employees, the court is not permitted to make merit determinations at this stage. See Ciani, 2015 U.S. Dist. LEXIS 5580 (M.D. Fla. Jan. 16, 2015)(defendants' competing affidavits challenging the plaintiffs' allegations regarding overtime and the tip credit far exceeded the court's limited inquiry at the notice stage of the conditional certification process); Reyes v. AT&T Mobility Servs. LLC, 801 F. Supp. 2d 1350, 1358 (in ruling on a motion for conditional certification, the court declined to engage in a "credibility battle" of the affidavits at the first stage); Creely v. HCR Manorcare Inc., 789 F. Supp. 2d 819, 839 (N.D. Ohio 2011)("[T]his court is not swayed by [defendants'] submission of thirty-five 'happy camper' affidavits . . . These affidavits are of little use at this juncture . . . the courts' function at this stage of conditional certification is not to perform a detailed review of individual facts from employees hand-picked by [the defendant].  Those questions of breadth and manageability of the class are left until the second stage analysis following the receipt of forms from all opt-in plaintiffs").  Accordingly, based upon the record before the Court, the undersigned finds that Plaintiffs have met their burden with respect to servers and the tip pool policy utilized

by Defendants at Mikee's, Steamers, and the Shrimp Basket
locations in Gulf Shores, Orange Beach, and Foley.[6] See
Longcrier, 595 F. Supp. 2d. at 1241( "[T]he critical inquiry for
defining the scope of the class is whether all included
prospective class members are similarly situated, meaning that
they are all collectively victims of a single policy or plan.").
While Plaintiffs seek to certify a class including all
employees, including servers and bartenders at the above-
referenced restaurants, plus other Shrimp Basket restaurants
located in other parts of Alabama, Florida, and Mississippi,
they have presented no evidence that bartenders at any of
Defendants' restaurants were required to contribute to a tip
pool. There is also no evidence before this Court that
individuals who worked in those locations desire to join this
action, or that servers at those locations were required to
contribute to tip pools that were distributed to non-tip
employees. Accordingly, the Motion for Certification is due to

---

[6] The undersigned stresses that this is a preliminary finding and
that it is possible that at the end of discovery, the addition
of Plaintiffs' claims regarding "off the clock" work and "side
work" might yield a different result in a stage two
certification analysis. See Longcrier, 595 F. Supp. 2d at 1238.
(While the defendants' affidavits created factual disputes as to
whether all hourly employees were subject to the same policies,
such disputes were properly addressed after discovery at the
second stage of the FLSA collective action process, if and when
a motion to decertify was filed.).

be denied with respect to bartenders and non-server employees, as well as individuals who were employed at Shrimp Basket locations other than Gulf Shores, Orange Beach, and Foley. See Gonzalez v. TZ Insurance Solutions, LLC, 2014 U.S. Dist. LEXIS 40188 (M.D. Fla. March 26, 2014)(where there was no evidence before the court bearing on whether defendants followed the same procedures outside the state of Florida, court determined that it was appropriate to limit breadth of the action to the defendants' locations in Florida.)

In sum, the undersigned recommends that Plaintiffs' Motion for Conditional Certification be **granted** in part and **denied** in part, that the class be conditionally certified as to individuals who were employed as servers at Mikee's, Steamers, and Shrimp Basket restaurants located in Orange Beach, Gulf Shores, and Foley between November 19, 2011 and November 2014, and were required to contribute to a tip pool that included employees customarily not entitled to tips.

The undersigned further recommends that Defendants be required to produce to Plaintiffs' counsel, in a mutually agreeable format, a list containing the name and current or last known address of all current and former servers whom Defendants employed at Mikee's, Steamer, and Shrimp Basket restaurants in Orange Beach, Gulf Shores, and Foley during between November 19, 2011 and November 2014.

21

Finally, the undersigned recommends that counsel for the parties be directed to confer and to submit to the court a mutually agreeable form of notice of opt-in rights for the Court's approval. See Dybach v. State of Fla. Dep't of Corrections, 942 F.2d 1562, 1567 (11th Cir. 1991)(concluding that the district courts are empowered to give notice to prospective opt-in plaintiffs under § 216(b) of their right to opt in if they so desire, provided that the "similarly situated" threshold is satisfied.); Gonzalez v. TZ Insurance Solutions, LLC, 2014 U.S. Dist. LEXIS 40188 (M.D. Fla. March 26, 2014)("Court-authorized notice in a class action context helps to prevent 'misleading communications', and ensures that the notice is 'timely, accurate and informative.'" (citation omitted).

## Notice of Right to File Objections

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. ALA. L.R. 72.4. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate

22

Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the **25th** day of **March, 2015.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**
