## IN THE UNITED DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **JESSICA MILLER, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **vs.** | ) **CIVIL ACTION** |
| | ) **NUMBER:** |
| | ) **1:14-CV-00468-CG-B** |
| | ) |
| | ) **JURY DEMAND** |
| **EDWIN J. SPENCE, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

### <u>PARTIES' JOINT MOTION TO APPROVE SETTLEMENT</u>

Pursuant to *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1352 (11th Cir. 1982), the three (3) named Plaintiffs, all fifty-three (53)[1] Opt-In Plaintiffs named herein and Defendants Edwin J. Spence, Edwin J. Spence, Jr., Port II Seafood & Oyster Bar, Inc. ("Mikee's"), Gulf Coast Steamer, Inc. ("Steamer"), The Shrimp Basket, Inc., Spence Enterprises, Inc., and Shrimp Basket of Orange Beach, Inc. (collectively referred to herein as "Defendants"), request the Court to approve settlement of all the named and opt-in Plaintiffs' claims in this Fair Labor Standards Act lawsuit.

---

[1] Cindy Yarborough (Doc. 92-3) was outside the three year statute of limitations. Plaintiffs' counsel has agreed to file a joint stipulation of dismissal simultaneously with this Motion. Parties are responsible for their own attorney's fees and costs related to Yarborough.

## Case History

Plaintiffs brought this action, pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et. seq*., and specifically, the collective action provision of the Act found at §216(b), for equitable and declaratory relief and to remedy alleged violations of the wage provisions of the FLSA by Defendants, which have allegedly deprived Plaintiffs, and all other similarly situated tipped employees employed by Defendants, of their lawful wages. Plaintiffs alleged that Defendants' actions in failing to compensate Plaintiffs and all other similarly situated servers in violation of the FLSA were willful. Plaintiffs sought to recover unpaid compensation, in the form of unpaid wages and overtime, owed to the Plaintiffs, and all similarly situated tipped servers by Defendant.  Defendants deny Plaintiffs' allegations and further deny that Plaintiffs are entitled to unpaid wages and overtime.

## Plaintiffs' Statement of Violations
## Under The Fair Labor Standards Act

Plaintiffs worked as servers for the Defendant restaurants.  After substantial briefing, the Court approved notice to be sent out to all current and former servers employed at Mikee's, Steamer, and Shrimp Basket

restaurants in Orange Beach, Gulf Shores, and Foley, Alabama, between November 19, 2011 and November 19, 2014.

Plaintiffs' allegations are encompassed in their Second Amended Collective Action Complaint (Doc. 67).  Plaintiffs alleged that Defendants did not pay them the federally mandated minimum wage. Plaintiffs alleged Defendants claimed a "tip credit" of $5.12 per hour and only paid them a reduced minimum wage rate of $2.13 per hour.  Plaintiffs alleged they were required to contribute a portion of tips to non-tipped employees, such as those who functioned as food expeditors, and were allowed to retain their remaining tips.  Plaintiffs alleged that the inclusion of these non-tipped employees, such as food expeditors, in the tip pool was unlawful because it is not a position that regularly and customarily received $30.00 in tips a month, independent of their participation in the tip pool.  Additionally, Plaintiffs alleged that food expeditors work in an area removed from the customers' dining area, are primarily tasked with plating trays, and do not run the trays to customers' tables or interact with customers.  Consequently, Plaintiffs alleged that food expeditors did not qualify as "tipped employees," as that term is defined under § 203(m) of the FLSA.  As a result, Plaintiffs alleged that Defendants' requiring servers to share tips with food expeditors

violated the limitations imposed on employers when claiming a tip credit in conjunction with a tip sharing scheme under the FLSA.  Plaintiffs further alleged they performed non-tip-related and non-tip- producing activities for Defendants for which they are owed compensation, and were not paid for all hours they worked.

### Collective Action Allegations

As explained in the Court-approved Notice of Collective Action, this lawsuit sought to recover the "tip credit" for every hour of a shift in which a server was required to contribute a portion of his/her tips to an invalid tip pool.  The "tip credit" is the difference ($5.12 per hour) between the Federal minimum wage ($7.25 per hour) and the reduced ("tipped") minimum wage ($2.13 per hour).  The lawsuit also sought an additional equal amount ($5.12 per hour) as liquidated damages, as well as attorneys' fees and costs.

During the notice period a total of fifty-three (53) individuals filed consent to join forms and became opt-in Plaintiffs.  Plaintiffs' counsel spoke with these individuals as they joined the lawsuit to confirm that they qualified for the lawsuit and to answer any questions they had regarding the continuing litigation.  Defendants agreed to produce certain records at the end of the notice period to help Plaintiffs' counsel perform damage

calculations, including "Employee Attendance Reports" showing the following categories of information: (1) Date/Time In; (2) Date/Time Out; (3) Hours; and (4) Wages. Defendants also produced W-2s and Payroll Journal reports showing the following categories of information: (1) pay description; (2) rate; (3) regular hours; (4) overtime hours; (5) amount; (6) withholding amount; and (7) deduction description. Defendants also produced records showing dates they claim their records suggested a food expeditor was working (hereinafter "Defendants' food expeditor dates")

### Defendants' Statement of Defenses

Defendants denied the allegations of Plaintiffs' Second Amended Collective Action Complaint. Specifically, Defendants denied that Plaintiffs were required to contribute to an invalid tip pool, denied that Plaintiffs were engaged in non-tip-related or non-tip producing duties for which they were owed compensation, and denied that Plaintiffs worked hours for which they were not paid. Defendants vigorously contested the allegations in the lawsuit, including opposition to Plaintiffs' Motion for Conditional Certification.

Defendants contend that they also submitted substantial evidence during briefing that the different tip pooling arrangements at each of its

Restaurants was lawful. In particular, Defendants submitted evidence in the form of declarations that those employees who received tips from a tip pool at its Restaurants were engaged in positions in which their substantial level of direct customer interaction rendered them eligible to properly receive tips from a valid tip pool. Defendants also submitted substantial evidence that no other non-tipped employees received tips from a tip pool. Finally, Defendants submitted substantial evidence that, in any event, food expeditors/runners were only used at the Restaurants during "busy" time periods such as spring break and summer.

## Settlement

Plaintiffs' counsel provided the clients who had longest tenures at each location with Defendants' food expeditor dates and consulted with these Plaintiffs' to evaluate Defendants' position. Notably, Plaintiffs indicated that the records were incomplete and inaccurate. Mindful of the standard articulated in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946), Plaintiffs' counsel developed location specific damage models, utilizing Defendants' records and client testimony to show the amount and extent of that work as a matter of just and reasonable inference.

Plaintiffs' counsel had each plaintiff's clock in and clock out times entered into Microsoft Excel sheets on a day by day basis, allowing for an independent calculation of hours worked utilizing Defendants' clock in and clock out times for each plaintiff. Plaintiffs' counsel then determined how many days each Plaintiff worked. For each Plaintiff, Plaintiffs' counsel cross referenced the dates they worked with those dates identified and recognized by Defendants as being "food expeditor" shifts. This approach was applied for each Plaintiff uniformly for hours worked and recorded at each location. Because Plaintiffs disputed Defendants' reporting of days when food expeditors worked, based on conversations with Plaintiffs and reviews of calendars, Plaintiffs determined a percentage of under-reporting of food expeditor time for each restaurant location. Plaintiffs added this percentage to their damage calculations for the tip credit claim. Plaintiffs' damage calculation also included alleged damages for time spent working off the clock, estimated by an average hour per shift.

## MIKEE'S SETTLEMENT FORMULA

First, Plaintiffs sought $5.12 per hour plus an equal $5.12 per hour in liquidated damages for every hour that an employee worked on a day that corresponded with Defendants' proposed food expeditor dates. Next,

7

Plaintiff sought $5.12 per hour plus an equal $5.12 per hour in liquidated damages for forty percent (40%) of the remaining hours worked that did not correspond with Defendants' proposed expeditors dates, to compensate for the under-reporting of food expeditor usage, as alleged by Plaintiffs.

For every day that Plaintiffs worked, counsel also sought an additional one hour in unpaid wages at $7.25 per hour, for time allegedly spent working off the clock, plus an equal $7.25 per hour in liquidated damages. Preliminary calculations based on this methodology were presented and explained to Plaintiffs for their approval.  Each Plaintiff was provided a copy of the records Defendant produced related to their employment.  If any Plaintiff indicated the records were deficient, then Defendants were notified and given an opportunity to supplement. This happened less than four times, and the errors were attributable to name changes.

## ORANGE BEACH, FOLEY, AND GULF SHORES SHRIMP BASKET LOCATIONS AND THE STEAMER IN GULF SHORES SETTLEMENT FORMULA

First, Plaintiffs sought $5.12 per hour, plus an equal $5.12 per hour in liquidated damages for every hour that an employee worked that corresponded with Defendants' proposed food expeditor dates. Next, Plaintiffs sought $5.12 per hour plus an equal $5.12 per hour in liquidated

damages for ten percent (10%) of the remaining hours worked that did not correspond with Defendants' proposed food expeditors dates, to compensate for the under-reporting of food expeditor usage, as alleged by Plaintiffs. For every day that Plaintiffs worked, Plaintiffs also sought an additional $7.25 per hour for time allegedly spent working off the clock, plus an equal $7.25 per hour in liquidated damages. Preliminary calculations based on this methodology were presented and explained to Plaintiffs for their approval. Each Plaintiff was provided a copy of the records Defendants produced related to their employment. If any individual plaintiff indicated their records were deficient, then Defendants were notified and given an opportunity to supplement.

## SETTLEMENT AMOUNTS

| | | | |
|---|---|---|---|
| ABRAMS | COURTNEY | $ | 10,061.33 |
| ALFANAS | OLGA | $ | 12,439.16 |
| BARRETT ARNOLD | KRISTIE | $ | 699.07 |
| BIDDLE | JEREMY | $ | 1,641.86 |
| BLACKWELL | CINDY | $ | 4,405.02 |
| BLACKWELL | BREE | $ | 1,800.00 |
| BOBO | JAMACIA | $ | 845.67 |
| BOWER | JENNIFER | $ | 4,834.09 |
| BOYETTE | RICHARD | $ | 11,326.11 |
| BOYINGTON | MATT | $ | 5,220.88 |
| BROWN | ROMANA | $ | 1,665.05 |
| CAGLE | JACQUELINE | $ | 7,934.89 |

| | | | |
|---|---|---|---|
| CARAWAY | REGINA | $ | 2,285.09 |
| CATTANEO | PATRICIO | $ | 3,180.21 |
| COOPER | RAVEN | $ | 2,146.67 |
| COX | AMANDA | $ | 10,511.11 |
| DALRYMPLE | BRANDY | $ | 5,750.15 |
| DOZIER | TABITHA | $ | 6,472.43 |
| DUBE | MICHELLEE | $ | 6,906.40 |
| DUNBAR | JULIA | $ | 3,740.71 |
| EMERSON | MARCI | $ | 2,128.89 |
| FERREIRA | KAILA | $ | 316.41 |
| FISHER | AMBER | $ | 506.97 |
| FRANKS | JAMES | $ | 8,804.39 |
| GARDNER | TYRA | $ | 4,755.17 |
| GILHEART | JOANNE | $ | 3,538.61 |
| GROVER | KRISTEN | $ | 391.59 |
| HALL | SHANA | $ | 3,102.83 |
| HAMMONTREE | KELSEY | $ | 1,303.06 |
| HARRIS | NEJLA | $ | 2,750.27 |
| HOLT | MICHELLE | $ | 31.05 |
| HUBBARD | TAWNEY | $ | 861.43 |
| JONES | VICTORIA | $ | 3,966.63 |
| JORDAN THOMPSON | KIMBERLY | $ | 226.74 |
| KNAPP | JAMIE | $ | 2,431.90 |
| LONGO BEZZRA | DARLA | $ | 6,531.92 |
| MCABE | JOANNE | $ | 760.60 |
| MILLER | JESSICA | $ | 17,940.37 |
| MOSS | ASHTON | $ | 2,861.49 |
| MURRAY | COLBY | $ | 964.65 |
| NELSON | VICTORIA | $ | 197.49 |
| NORMAN | JULIA | $ | 1,798.90 |
| NORWOOD | REBEKA | $ | 6,175.69 |
| PRINCE | DANIELLE | $ | 2,672.33 |
| RACE | AMBER | $ | 3,865.15 |
| RICH | JESSICA | $ | 8,360.10 |

| SINGH | ANEGLINA | $ | 6,200.61 |
|-------|----------|---|----------|
| SOWER | SONYA | $ | 3,933.46 |
| STACY | RHODA | $ | 5,341.70 |
| STAPLETON | BRITTANY | $ | 5,868.77 |
| STRINGER | MEGAN | $ | 785.99 |
| TOBIAS | CAMERON | $ | 1,733.53 |
| VETTER | LAURA | $ | 2,952.29 |
| VOGEL | MARIE | $ | 14,991.67 |
| VOUCHOK | MARYNA | $ | 4,174.23 |
| WILLIAMS | CHRISTOPHER | $ | 8,233.76 |
| | | $ | 245,326.54 |

## INCENTIVE COMPENSATION FOR NAMED PLAINTIFFS

Under the terms of the settlement, plaintiffs' counsel proposed and Defendants have agreed that each of the named Plaintiffs (Jessica Miller, Richard Boyette, Rebecca Norwood) should receive incentive compensation of $5,000.00 each for their participation in this action. The parties state that this incentive compensation is based on the class representatives': (1) serving as named plaintiffs; (2) answering discovery; (3) attending hearings in Mobile, Alabama, while missing work; and (4) assisting class counsel with the investigation, prosecution, and settlement of this case.

> Although "the Eleventh Circuit has not expressly set forth guidelines for courts to use in determining incentive awards, there is ample precedent for awarding incentive compensation to class representatives at the conclusion of a successful

11

> class action." A*llapattah Servs., Inc. v. Exxon Corp.*, 454 F. Supp. 2d 1185, 1218 (S.D. Fla. 2006). "'Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.'" *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (quoting *In Re S. Ohio Corr. Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997)). "Incentive awards serve an important function, particularly where the named plaintiffs participated actively in the litigation." *Allapattah*, 454 F. Supp. 2d at 1218 (internal citation omitted).

*Camp v. City of Pelham*, 2014 U.S. Dist. LEXIS 60496, 14-16 (N.D. Ala. May 1, 2014).

In the instant case, the named Plaintiffs faced substantial risks by participating in the lawsuit and incurred actual expenses and lost wages during the litigation.

> For example, *in Su v. Electronic Arts, Inc.,* No. 6:05-cv-131-Orl-28JGG, 2006 U.S. Dist. LEXIS 98894, 2006 WL 4792780, at * 5 (M.D. Fla. Aug. 29, 2006), the named plaintiff testified that he feared that his career would be adversely affected as a result of initiating litigation against his former employer
>
> He also had to use four vacation days to travel to attend hearings in the case. The Court found this evidence sufficient to support a $10,000.00 incentive fee recommended by all parties to the litigation.

> Similarly, in *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174 (W.D.N.Y. 2005), the Court approved an incentive payment to the named plaintiff in a hybrid Rule 23 class action and FLSA collective action. The court wrote:
>
> > While the majority of reported decisions granting incentive awards arise out of securities litigation, . . . such awards are particularly appropriate in the employment context. In employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers. *Id*. at 187.

*Heath v. Hard Rock Café Int'l (STP), Inc.,* 2011 U.S. Dist. LEXIS 135286

(M.D. Fla. Oct. 28, 2011).

The proposed incentive payment of $5,000.00[2] to each named Plaintiff did not diminish the amount any settlement class member would receive under the formulas used to calculate individual settlement amounts.

---

[2] See also *Risch v. Natoli Eng'g Co., LLC*, 2012 U.S. Dist. LEXIS 136156, 9-10 (E.D. Mo. Sept. 24, 2012) ("The terms of the Settlement Agreement have no obvious deficiencies and do not improperly grant preferential treatment to any individual class member. The Court approves payment of an individual incentive award to the named Plaintiff in the amount of $5,000.00 as set forth in the Settlement Agreement for her services as class representative. The class representative incentive award is reasonable and appropriate and shall be made from the settlement fund in accordance with the terms of the Settlement Agreement." *See, e.g., Crocker v. KV Pharmaceutical Co.*, No. 4:09-CV-198 (CEJ), at *8 (E.D. Mo. May 4, 2012) (approving incentive awards of $4,000 and $8,000); *Wolfert v. UnitedHealth Group, Inc.*, No. 4:08CV01643(TIA), 2009 U.S. Dist. LEXIS 74261, at *7 (E.D. Mo. Aug. 21, 2009)  (approving an incentive award of $30,000).

## Attorneys Fees & Costs

The Parties represent that they reached a reasonable and fair resolution of Plaintiffs' FLSA claims. The Parties further state that they engaged in good faith, arm's-length negotiations in an effort to resolve the matter. The record indicates that a bona fide dispute existed regarding Defendants' entitlement to a tip credit during the period of time in which Plaintiffs worked for Defendants, as well as Plaintiffs' other claims pursuant to the FLSA.   Plaintiffs' attorneys' fees were agreed upon separately and without regard to the amount paid to Plaintiffs.

Counsel for Plaintiffs have ably and adequately represented Plaintiffs class for purposes of entering into and implementing the settlement agreement. As counsel, Daniel Arciniegas and Rachel McGinley have: researched, briefed, and argued contested issues; reviewed significant discovery[3]; discussed the litigation posture with plaintiffs; prepared sophisticated damage calculations; negotiated with opposing counsel; and prepared the joint motion to approve proposed settlement. Plaintiffs' counsel have incurred costs associated with sending the notice, and will incur additional costs in the administration of the settlement funds.

---

[3]   In instant case there were thousands of pages of payroll and attendance records produced, as well as other documents related to Plaintiffs' damage computations.

Ultimately, Defendants agreed to pay Plaintiffs' counsel one hundred and thirty thousand dollars ($130,000.00) for attorneys' fees and costs to resolve this litigation. The amount for attorneys' fees and costs was not discussed until *after* Defendants had agreed to pay plaintiffs two hundred sixty thousand, three hundred twenty six dollars and 54/100 cents ($260,326.54) as settlement for individual claims as detailed above, including incentive compensation for the named Plaintiffs. The total fee amount sought in this case is not patently unreasonable and Defendants do not contest the reasonableness of the amount, for purposes of resolving the present litigation.[4] The parties stipulate that an amount of $130,000.00 in attorneys fees and costs is reasonable for the purposes of resolving the present litigation.[5]

---

[4] In *Angelia House, et al., v. The Original Oyster House, Inc.*, Case No. 1:14-cv-00172-C, a similar tip credit case, the Honorable Judge Cassady approved fees totaling $110,937.50 for the settlement of a collective action class of sixty three plaintiffs. (Doc. 169)

[5] As courts have recognized, in circumstances similar to the instant matter, a lodestar analysis is not always required. *See Crabtree v. Volkert, Inc.*, 2013 WL 593500, at *7 n. 4 (S.D. Ala. Feb. 14, 2013) ("[P]ersuasive district court authority has deemed scrutiny of the reasonableness of plaintiff's agreed-upon attorney's fees to be unnecessary in an FLSA settlement where 'the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff,' except in circumstances where 'the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney.' ") (quoting *Bonetti v. Embarq Management Co.*, 715 F.Supp.2d 1222, 1228 (M.D. Fla. 2009); and citing also *Wing v. Plann B Corp.*, 2012 WL 4746258, *4 (M.D. Fla. Sept. 17, 2012) (declining to examine reasonableness of attorney's fee payment in FLSA settlement

## ANTICIPATED EXPENSE AND DURATION OF CONTINUED LITIGATION

The anticipated expense and duration of this litigation militates in favor of accepting the proposed settlement. Completion of this action through continued litigation would require extensive discovery. Resolving issues such as Defendants' good faith defenses and Plaintiffs' willfulness allegations could potentially be resolved for the five Defendant Restaurants through multiple witnesses. However, weeks of testimony from numerous witnesses for each Restaurant would likely be required as to issues if this were to continue to a full trial.

Defendants have already incurred substantial time, expense, and distraction from running their business as a result of this litigation. As a result, while they deny the allegations leveled against them by Plaintiffs in full, they recognize that continued litigation is time-consuming and expensive, and have elected to settle the present litigation as a matter of business judgment.

---

where the FLSA claims were compromised, there was a reasonable basis for such compromise, and "Plaintiff's claims were resolved separately and apart from the issue of attorneys' fees," such that "there is no reason to believe that plaintiff's recovery was adversely affected by the amount of fees and costs to be paid to plaintiff's counsel")).

## MEMORANDUM OF LAW

Employees can settle and release claims under the FLSA in two ways. First, employees can settle and waive their claims under the FLSA if the Secretary of Labor supervises the payment of unpaid wages by the employer to the employee.  See 29 U.S.C. § 216(c) (2008); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982).  Second, in the context of a private lawsuit brought by an employee against an employer under the FLSA (as is the case here), an employee may settle and release FLSA claims if the parties present the district court with a proposed settlement, and the district court enters a stipulated judgment approving the fairness of the settlement.  *Lynn's Food Stores, Inc.*, 679 F.2d at 1353; *see also D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 113 n.8 (1946) (discussing propriety of allowing settlement of FLSA claims where district court has reviewed terms of settlement agreement).

 "In reviewing a settlement of an FLSA private claim, the court must scrutinize the settlement for fairness and determine that the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Stalnaker v. Novar Corp.*, 293 F. Supp 2d 1260, 1263 (M.D. Ala. 2003) (citing *Lynn's Food Stores,* 679 F.2d at 1353, 1355) (internal quotations

omitted.).  The Eleventh Circuit held that "'[i]f a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute[,] ... the district court [may] approve the settlement in order to promote the policy of encouraging settlement of litigation.'" *Id*. (quoting *Lynn's Food Stores*, 679 F.2d at 1354).

In this matter, the Parties recognized that the evidentiary dispute regarding Plaintiffs' claim for allegedly unpaid or "off-the-clock" time spent would lead to continued costly litigation.  The Parties further recognized that the costs associated with the production, review of these records, and/or potential testimonial evidence necessary for determination of liability, as well as damage calculations if liability were found, would significantly increase litigation costs and potentially jeopardize the settlement amounts and delay payment of the offers made. Accordingly, the parties agreed in the interest of settlement that a nominal valuation of these claims would be added to the damages model paying employees the liquidated "tip differential" or "tip credit" amount for the two-year liability period.

In the instant action, the Court should approve the Parties' Settlement Agreement to resolve Plaintiffs' FLSA claims against Defendants. The

proposed Settlement Agreement arises out of an action that was adversarial in nature. The Parties vigorously disputed the merits of this case, with Plaintiffs contending that Defendants violated Plaintiffs' minimum wage and overtime wage rights as tipped employees and Defendants disputing Plaintiffs' factual allegations. During the litigation and settlement of this action, Plaintiffs and Defendants were represented by competent and experienced attorneys who are well versed in this area of the law. Plaintiffs and their counsel discussed their alleged minimum wage and overtime wage claims, and formulated independent calculations and analysis.

There remain disputes in this case as to whether Defendants "willfully" violated the wage-hour laws so as to expand the liability period to three years as opposed to the two year period of liability generally available under the FLSA, whether Plaintiffs performed substantial non-tip producing work rendering Defendants' claimed "tip credit" improper, whether the "tip credit" could be claimed for shifts in which Plaintiffs allege they did not directly share tips with non-tipped employees, and whether Plaintiffs performed "work" as interpreted under the FLSA for which they did not receive compensation, including unpaid overtime.

The parties entered into this settlement in recognition of the risks inherent in any litigation -- specifically, for Plaintiffs, the risk of no recovery, and for the Defendants, the risk of a verdict against them on the merits.  Because the Settlement Agreement represents a fair and reasonable compromise over bona fide FLSA wage disputes and was negotiated at arm's-length, the Court should approve this settlement.

## TERMS OF SETTLEMENT

Subject to the approval of this Court, in consideration of the benefits inuring the Parties hereto, each Plaintiff who has filed their consent with the Court in this lawsuit releases and forever discharges the following:  (1) Edwin J. Spence; (2) Edwin J. Spence, Jr.; (3) Port II Seafood & Oyster Bar, Inc., and any current or former owner, officer, director, agent, employee, shareholder, insurer or attorney; (4) Gulf Coast Steamer, Inc., and any current or former owner, officer, director, agent, employee, shareholder, insurer or attorney; (5) The Shrimp Basket, Inc., and any current or former owner, officer, director, agent, employee, shareholder, insurer or attorney; (6) Spence Enterprises, Inc., and any current or former owner, officer, director, agent, employee, shareholder, insurer or attorney; and (7) Shrimp Basket of Orange Beach, Inc., and any current or former owner, officer,

director, agent, employee, shareholder, insurer or attorney (collectively referred to as the "Releasees"). Each Plaintiff shall release and forever discharge the Releasees from any and all FLSA claims based on the factual allegations in the Complaint and any Amended Complaint and from any other claim related to unpaid wages or insufficient payment of wages, only as to the five Restaurant locations for which conditional certification was granted in this lawsuit

To further confirm their agreement to the terms of this settlement, the following language shall be included on each settlement check sent to each Plaintiff: "My signature on, deposit, or cashing of this check confirms my release of specific claims against the Releasees as provided in the Order Approving Settlement in the case of Miller v. Spence, Case No. 1:14-CV-00468-CG-B (S.D. Al.)."

Each settlement offer for these fifty-six (56) claims states a total amount equaling the minimum wages and liquidated damages to be paid to each Plaintiff calculated as described herein. The alleged back pay will be paid subject to all applicable employee tax withholdings and payroll deductions. The liquidated damages will not be subject to tax withholdings or payroll deductions. The method of calculation is reasonable and does not

compromise or diminish Plaintiffs' alleged recovery, nor did it undermine the broad remedial purpose of the FLSA.

Each Plaintiff understands that the total amount be paid to him or her is calculated as described herein. The back pay portion of each Plaintiff's settlement amount will be paid subject to all applicable employee tax withholdings and payroll deductions for which Defendants have agreed to issue IRS Form W-2s. The remaining 50% of the individual settlement amount as well as the incentive payments for named Plaintiffs will be paid without withholdings, and Defendants have agreed to issue IRS Form 1099s. Defendants make no representation about the appropriate tax treatment of the payments contemplated herein. Except as otherwise provided herein, the parties and their counsel acknowledge and agree that payment of any taxes due are entirely the responsibility of the recipient. Plaintiffs agree to individually execute IRS Form W-4s for administration of the back wage portion of the payments which are subject to withholdings and standard deductions.

Defendants will make payments by regular U.S. mail, return receipt requested, to Plaintiffs' counsel. Plaintiffs are individually responsible for keeping Defendants informed concerning any changes in mailing addresses.

The settlement payments and attorneys' fees will be made within thirty (30) calendar days after the date of the Court's Order approving settlement.

The parties maintain this settlement is fair and reasonable resolution of a bona fide FLSA dispute.  Counsel for all Parties are experienced in wage and hour litigation. They reviewed the evidence and the applicable law and have concluded that settlement of these claims is in the best interest of their respective clients. They have recommended this settlement to their clients as a reasonable compromise of all the disputed issues of law and fact, and the parties agree.

The Parties request the Court enter a stipulated judgment and retain jurisdiction for a period of forty-five (45) calendar days after the Court enters an order approving this settlement.  If no party advises the Court within such forty-five (45) days that the settlement has not been consummated, then the judgment shall be deemed satisfied.

WHEREORE, the foregoing premises considered, the parties respectfully request that the Court find that the terms of the proposed settlement represent a fair and reasonable resolution of this bona fide FLSA dispute, approve this settlement, resolving all claims arising from this lawsuit and dismiss this lawsuit with prejudice, and with leave to the parties,

to have the dismissal set aside and settlement enforced, should the settlement

not be consummated.


Respectfully submitted this 8th day of March, 2016.


ATTORNEYS              FOR
PLAINTIFF:

*s/ Daniel E. Arciniegas*

Daniel E. Arciniegas
Rachel L. McGinley
Jon C. Goldfarb
WIGGINS,            CHILDS,
PANTAZIS
FISHER & GOLDFARB, LLC
The Kress Building
301 19th Street North
Birmingham, Alabama 35203
Phone:  (205) 314-0500
Fax:  (205) 254-1500

ATTORNEYS FOR DEFENDANTS:

*s/ B. Tyler White*

Tammy L. Baker
JACKSON LEWIS P.C.
First Commercial Bank Building
800 Shades Creek Parkway, Suite 870
Birmingham, Alabama  35209
Phone:  (205) 332-3106
Fax:  (205) 332-3131

And

B. Tyler White
JACKSON LEWIS, P.C.
501 Riverside Avenue, Suite 902
Jacksonville, FL  32202
Phone: (904) 638-2655
Fax:  (904) 638-2656

Attorneys for Defendants Port II
Seafood & Oyster Bar, Inc., Gulf
Coast Steamer, Inc., The Shrimp
Basket, Inc., Edwin J. Spence, and
Edwin J. Spence, Jr.

And

Lawrence M. Wettermark
Robert M. Galloway
GALLOWAY, WETTERMARK,
EVEREST & RUTENS LLP
P.O. Box 16629
Mobile, AL  36616
Attorneys for Spence Enterprises,
Inc., And Shrimp Basket of Orange
Beach, Inc.

4850-5767-5310, v.  1